In the Matter of EDWARD SACKS, an Attorney, Respondent. CO-ORDINATING COMMITTEE ON DISCIPLINE, Petitioner.

In the Matter of MORRIS J. SCHNUR, an Attorney, Respondent. CO-ORDINATING COMMITTEE ON DISCIPLINE, Petitioner.

First Department, July 9, 1964.

*Henry Weiner* (*Joseph B. Castleman* with him on the brief), attorney for petitioner.

*Daniel V. Sullivan* (*Desmond T. Barry, Edward A. Shandell* and *Richard E. Shandell* with him on the brief), attorney for respondents.

*Per Curiam.* This is a disciplinary proceeding against two attorneys and counsellors at law, pursuant to section 90 of the Judiciary Law. The proceeding was instituted by petition of the Co-ordinating Committee on Discipline.

A Referee, appointed by this court, held hearings on nine days, over a three-month period. Of 14 charges arising out of respondents' personal injury negligence practice, the Referee found that 10 were established. Petitioner no longer presses the four charges found not established. It moves to confirm the report of the Referee, seeks a finding that respondents are guilty of professional misconduct, and requests appropriate action by the court. Respondents cross-move to disaffirm the report only as to 4 of the 10 charges found established by the Referee.

Respondents admitted five charges from the outset and have abandoned their opposition to the finding on one charge. Thus they admit settlement of infants' cases without court approval, failure to advise clients that an action had been dismissed for failure to prosecute, procuring some blank statements of retainer, failure to file some statements of retainer, and failure to file some closing statements. Also, they now concede that they omitted some payments and disbursements from closing statements. But they vigorously dispute the findings that they submitted false medical reports and bills to insurance carriers,

indulged in the practice of building up claims by recommending doctors they knew would submit exaggerated reports and bills, submitted a false loss-of-earnings statement to an insurance carrier, and omitted the names of persons who had referred clients with intent to deceive the court and conceal the facts.

Respondents have been friends for over 30 years. They attended law school together, and were admitted to the Bar in the Second Department on March 28, 1951. They have practiced law as partners since 1951 under the firm name of Sacks & Schnur with their principal office in Manhattan and a branch office in Brooklyn.

Respondent Sacks is 36 years of age and has three young children. He served in the United States Navy from May, 1945 to June, 1946. Respondent Schnur is also 36 years of age and has two young children. Their Brooklyn office is in a vicinity in which both resided and are apparently well known.

Their extensive negligence practice is evidenced by the fact that during the period January 12, 1952 to June 29, 1960 they filed 2,192 statements of retainer involving 3,978 claimants. They participated as equal partners, and there is no contention that one is not responsible for the acts or omissions of the other.

Respondents have admitted charges constituting professional misconduct. In addition, it is concluded that the Referee correctly found that respondents submitted a false loss-of-earnings statement in one case and a false medical report and bill in another case (the Bangel family claim). Although it was not shown that respondents omitted the names of referrers from statements of retainer with intent to deceive or conceal, simple omission was nevertheless established. Consequently, imposition of disciplinary sanctions is warranted.

The facts concerning the Bangel family claim are the basis for the findings as to the charges of submitting false medical reports and bills and the practice of building up medical fees. Mrs. Bangel and her two daughters were in an automobile accident. Upon returning home she telephoned respondents. After respondent Sacks learned she had no family physician, he recommended one of the doctors with whom respondents had a working arrangement. Although respondents say they would never pay a doctor's bill for medical services, they paid for a medical report to be submitted to the insurance company. The amount was $25 for a report as to one person, and $15 for each additional person involved in the report. Payment was made in cash by respondents at the doctor's office, because the doctor so insisted.

Thus respondents paid the doctor $55 in cash for a hand-written report and bill concerning Mrs. Bangel and her two daughters. The report mentioned sprains and contusions, but nothing else. The Referee permissibly concluded that the $160 bill was obviously excessive and that the bill itself, under the circumstances, apprised respondents of that fact. Knowing submission to an insurance carrier of a false medical report and bill constitutes professional misconduct (*Matter of Greenberg,* 19 A D 2d 375; *Matter of Gladstone,* 16 A D 2d 512, mot. for lv. to app. den. 12 N Y 2d 644; *Matter of Shields,* 16 A D 2d 50, mot. for lv. to app. den. 11 N Y 2d 648).

These same facts were used to establish the charge of engaging in the practice of building up claims by recommending doctors who respondents already knew would submit reports of exaggerated injuries. Since only one instance was proven, no " practice " was shown nor was it established that respondents knew before they were received that the report and bill would be exaggerated. Accordingly, this charge should not be sustained.

The facts concerning the Crowder claim are the basis for the remaining specification of submitting false medical reports and for the charge of submitting a false loss-of-earnings statement. The finding as to the false medical report specification may not be sustained. There was no evidence that respondents or the lawyer handling the matter knew that Crowder's independently retained doctor had exaggerated, if he did.

After obtaining Crowder's retainer, respondent Sacks referred Crowder to another lawyer in Crowder's neighborhood who handled the claim. That lawyer mailed a false loss-of-earnings statement to the insurance carrier accompanied by a letter on firm letterhead stationery. Respondents had given him a supply. Since respondents gave the lawyer authority to act for them, they should be held responsible for what was done on their behalf where there was risk of fabrication and opportunity to check the facts (cf. *Matter of Reisler,* 20 A D 2d 315; *Matter of Lemkin,* 17 A D 2d 550, 552, mot. for lv. to app. den. 13 N Y 2d 724; *Matter of Gladstone,* 16 A D 2d 512, 516, *supra*).

The charge that respondents omitted names of referrers from statements of retainer to " deceive " the court and " conceal " the facts must be modified. While it was shown they omitted the names of persons who had referred about six cases to them, there is insufficient evidence to show intent to deceive or conceal. Some of the clients were friends of friends and others, who claimed to be acquaintances, were referred by various people under innocent circumstances. The omissions did not cloak

solicitation. However, the omission of the names was a lesser violation of the rules of this court.[*]

None of the remaining charges are disputed. Respondents admit negligence and laxity in keeping records and making reports. As to 12 claimants, they failed to include certain payments and disbursements in closing statements. They never reported cash payments to doctors for medical reports and bills. This constitutes professional misconduct (*Matter of Reisler, supra*).

In 15 out of 177 infants' claim respondents utilized a parent's release and indemnity agreement furnished by the insurance carrier instead of obtaining court approval. Respondents state that they thought, at the time, the practice was customary. By following such a practice, respondents were guilty of professional misconduct (*Matter of Reisler, supra; Matter of Feldman,* 17 A D 2d 553, 557).

Respondents concealed from a husband and wife that their action for $4,000 damages for injury to the wife had been dismissed for failure to prosecute. The wife injured her ankle when her foot caught in a department store escalator. Respondents state they were embarrassed and reluctant to reveal the dismissal. Respondent Sacks told the husband and wife that they had no case and offered to settle with them for $100. The husband and wife brought an action against respondents which was settled for $67, the costs awarded in the dismissed action. Even though the action no doubt lacked merit, respondents should have kept their clients informed (cf. *Matter of Corso,* 7 A D 2d 133).

In 10 instances respondents obtained written retainer agreements in which the name of the attorney retained was left blank. This constituted a violation of the rules of this court and was professional misconduct.[**]

Finally, respondents failed to file 7 statements of retainer and 25 closing statements. This also constituted professional misconduct (*Matter of Lemkin,* 17 A D 2d 550, 552, *supra; Matter of Wysell,* 10 A D 2d 199).

The worst of the major charges against respondents were not proven. Although one instance of submission of a false medical report and bill was established, the state of mind indicated, as

---

[*] Part 4, rules II and IV, subd. (1), par. (b) [eff. Sept. 1, 1963], formerly rules 4-G and 4-A [adopted 1929 and later amended], superseded by rules 2 and 4, subd. (1), par. (b) [eff. July 1, 1960] of the Special Rules Regulating Conduct of Attorneys.

[**] Part 4, rules II and IV, subd. (1), par. (d), formerly Special Rules 4-G and 4-A superseded by rules 2 and 4, subd. (1), par. (d), see fn. *supra.*

a matter of record proof, was gross disregard of facts that should have been apparent, rather than willfullness. In other words, it was shown that respondents probably noticed from the doctor's report concerning the Bangel family that it was exaggerated. Also, responsibility for submission of the false loss-of-earnings letter is imputed to respondents, under the circumstances, because of the authority they conferred on the lawyer who submitted the letter. The only proof of deliberate falsehood is with respect to concealing the dismissal of the action for failure to prosecute and perhaps, inferentially, with respect to omitting from the closing statements the cash payments to doctors. Since it is unlikely that the action dismissed for failure to prosecute had merit, there was no showing of injury to clients.

Thus the record primarily shows an extreme laxity by respondents in attending to their affairs, maintaining records, and filing accurate reports. They lapsed into a slovenly practice. Although many specifications were not proven, those proven and admitted involve serious professional misconduct. However, respondents evinced a fairly co-operative attitude, and this should be considered. Under the circumstances, respondents should be suspended from the practice of the law for one year (cf. *Matter of Reisler,* 20 A D 2d 315, *supra*).

Accordingly, the Referee's report should not be confirmed as to charge 2 and the Crowder specification of charge 1, the finding as to charge 6 should be confirmed only to the extent it finds omissions, eliminating a finding as to intent to deceive or conceal, otherwise the report should be confirmed and respondents suspended from the practice of the law for one year.

Breitel, J. P., Rabin, Valente, Stevens and Eager, JJ., concur.

Respondents suspended for a period of one year.