OPINION OF THE COURT
F. Dana Winslow, J.
In this medical malpractice action that was settled prior to trial, William S. Jones, Esq. (Jones) and the Law Office of William A. Gallina, Esq. (Gallina) have petitioned this court pursuant to Judiciary Law § 475 for a determination on a fee dispute between petitioners and the Law Offices of Frederick K. Brewington (Brewington), incoming counsel to the plaintiffs, Earlwin and Dionne Warren. Jones and Gallina claim that they are entitled to a percentage of the contingency fee based on their proportionate share of work performed. Brewington contends that since the Gallina firm never had a valid retainer agreement with the plaintiffs they have no standing to enforce an alleged lien or to claim a fee. Brewington further contends that although Jones was retained by Earlwin Warren, he is not entitled to a fee for his prior representation of the Warrens as a result of his employment by the New York City Transit Authority, which generally prohibits private employment by its counsel. The court determines the matter as follows.
Findings of Fact and Conclusions of Law
On April 27, 1997 Earlwin Warren executed a retainer agreement with William S. Jones, Esq., whose office is listed as 240 West 138th Street, New York, New York. Jones’ retainer agreement provides for a percentage fee based upon any recovery in the action (see Judiciary Law § 474-a). Sometime thereafter, Jones brought Earlwin Warren to the Law Office of William A. Gallina with the intention of having that office assist in the preparation and prosecution of the matter. On or about July 3, 1997, Gallina was allegedly retained by the Warrens, as evidenced by blank retainer statements executed by them and the firm’s commencement of work on the case, including correspondence, inter alia, with the Warrens.
On August 20, 1997 the Warrens contacted the Law Offices of Frederick K. Brewington, consulted with him on this matter and executed a consent to change attorney, which form was forwarded that day to the Gallina firm. Thereafter, on August *670 28, 1997, after an apparent change of heart, the Warrens decided to remain with the Gallina firm and on September 6, 1997 the Gallina firm commenced suit on their behalf.
Thereafter, on December 3, 1997 Earlwin Warren again visited the Brewington office and sought their representation in this matter and on December 5, 1997 both Earlwin and Dionne Warren executed a formal retainer agreement with Brewington’s firm. Brewington’s office filed a retainer statement with the Office of Court Administration (OCA) as required pursuant to 22 NYCRR 691.20 (1). At that time a disagreement arose between the Gallina firm and the Brewington firm concerning the turnover of the file to the Brewington firm and a determination of the fee arrangement. The Brewington office, by way of order to show cause, moved for an order substituting him as the attorney of record in this matter, directing the Gallina firm to turn over the file, and directing that the determination of legal fees, if any, due to the outgoing attorney, be reserved for the trial court at the conclusion of the action.
By order dated March 6, 1998, the court (Bucaria, J.) granted Brewington’s application and directed (1) that the outgoing attorneys deliver the files to Brewington’s office, and (2) that outgoing counsel shall have a charging lien on any proceeds resulting from the verdict and/or settlement herein, the specific amount to be determined by the Justice at the time of trial, and if there is a settlement, then by an appropriately noticed hearing.
Prior to trial, Frederick Brewington negotiated a settlement of the instant matter for $500,000, after which Jones and the Gallina office petitioned the court for a fee hearing. The court requested that the attorneys submit and exchange their records concerning their work performed on the matter, which work was the subject of examination at the hearing held before the Honorable F. Dana Winslow on May 25, June 9 and October 16, 2000.
Retention of Counsel
The court finds that Jones was retained by Earlwin Warren, as evidenced by the written retainer agreement and Warren’s and Jones’ testimony. Commensurate with Jones’ retainer agreement, Earlwin Warren executed hospital record authorizations for Jones and Jones thereafter prosecuted this matter without objection on behalf of both Earlwin and Dionne Warren. On this evidence the court finds that the Jones’ retainer, executed by Earlwin Warren, is sufficient to establish that *671 Jones had an agreement to represent the Warrens “notwithstanding the absence of a formal retainer agreement including all of the parties,” to wit, Dionne Warren (see, Haythe & Curley v Harkins, 214 AD2d 361, 362 [1st Dept 1995]).
With respect to the Gallina firm, the testimony establishes that Jones brought Earlwin Warren to the Gallina office and introduced him to them. It is undisputed that the Gallina firm, which commenced the action on behalf of the Warrens, was the attorney of record. As such, the Gallina firm continued the prosecution of the case with receipt of the defendants’ answers and preparation of the plaintiffs’ responses to defendants’ discovery demands, all of which involved discussions with the Warrens, inter alia, and was done with Earlwin Warren’s knowledge. In fact, evidence was presented that Earlwin Warren requested various copies of the papers from the Gallina office and that much of his dissatisfaction with Gallina’s office resulted from that office’s failure to adequately respond to those requests.
While it is clear that a direct working relationship had been established between the Gallina firm and the plaintiffs, there is no proof that the Law Office of William A. Gallina was ever formally retained by the Warrens. The Gallina office presented two signed but otherwise blank retainer statements executed by the Warrens allegedly at the time of their retention but no completed written retainer agreements between the Warrens and the Gallina firm have been shown to exist. On the contrary, Earlwin Warren testified that he did not believe that he ever directly retained the Gallina firm and assumed that Jones, whom he did retain, and the Gallina associate with whom he had been working, Louis Solimano, Esq., were partners.
The court finds that these blank retainer agreements are not probative of the retention issue, and in fact constitute violations of 22 NYCRR 691.20 (a) (4) which mandates that “[n]o attorney shall accept or act under any written retainer or agreement of compensation in which the name of the attorney was left blank at the time of its execution by the client” (see also, Matter of Sachs, 21 AD2d 483 [10 instances of the use of retainer agreements in which the name of the attorney retained was left blank constituted professional malpractice]). Thus, the court is compelled to find that the Gallina office cannot assert any direct claim to a fee based upon retention by the Warrens in this matter.
However, this is not to say that Gallina is necessarily precluded from sharing in the fee as an agent of Jones, *672 provided the retention of Jones by the Warrens was in compliance with mandatory OCA filing requirements and was otherwise lawful. It is to the particulars of this consideration that the court now turns.
Right of Retained Counsel to Attorney’s Fees
Neither Jones nor Gallina filed retainer statements with the OCA at the time of their retention. An attorney’s failure to file a retainer statement or agreement has been held to bar recovery of a fee (see, e.g., Alexander Potruch, P. C. v Berson, 261 AD2d 494 [retainer agreement in a matrimonial matter as required pursuant to 22 NYCRR 1200.11 (c) (2) (ii)]; Rabinowitz v Cousins, 219 AD2d 487 [retainer statement in a medical malpractice action pursuant to 22 NYCRR 603.7]). However, both Jones and the Gallina office filed retainer statements nunc pro tunc with the OCA (22 NYCRR 691.20 [a] [1], [3]) on May 23, 2000, prior to the commencement of the fee hearing. It is the determination of this court that such filing, though late, is sufficient to preserve the right to recover a legal fee otherwise earned (cf. Matter of Abreu, 168 Misc 2d 229, 234 [a six-year delay in filing a retainer statement due to law office failure was held not to bar a claim for recovery of a legal fee]).
In his affidavit filed with the OCA, Jones identifies himself as the “referring attorney” to Gallina. Gallina’s retainer statement provides that the firm was engaged by another attorney, namely, Jones. Code of Professional Responsibility DR 2-107 (22 NYCRR 1200.12) permits an attorney to share a fee with a nonpartner or associate attorney provided, inter alia, the client consents after full disclosure that a division of fees will be made. The Warrens clearly knew that Mr. Solimano of the Gallina firm was acting in their behalf at Mr. Jones’ request and for compensation, despite a lack of clarity, perhaps, concerning the precise nature of the relationship between the two attorneys. There is nothing about Jones’ retention of Gallina, per se, that would deprive either one to a right to reasonable compensation.
Brewington argues that the Jones’ retention was nevertheless unlawful because of Jones’ alleged inability to accept legal employment as a result of the terms of his employment by the New York City Transit Authority (NYCTA). Brewington has submitted a revised policy/instruction document, number 6.41.2, issued April 19, 2000, and a memorandum from Martin B. Schnabel, vice-president and general counsel of the NYCTA Department of Law, dated June 30, 2000, which states, in pertinent part, that:
*673 “it has been, and remains, the policy of the Law Department that attorneys are strictly prohibited from regularly engaging in the outside practice of law. In no event may an attorney hold himself or herself out to the public as available for professional retainers. Dual employment applications will therefore be acted upon favorably only to the extent that they relate to the handling, on a non-recurring basis, of isolated matters on behalf of family members or close social acquaintances and can be accomplished in their entirety in a manner and during a time frame which does not conflict with one’s representation of the Authorities.”
Even assuming that this policy was in effect at the time of Jones’ retention (a fact which has not been established to the court’s satisfaction), it does not operate to render an otherwise valid retainer agreement void for purposes of determining entitlement to an attorney’s fee. While it is well recognized that such restrictions on employment by governmental or quasi-governmental agencies are enforceable (Flood v Kennedy, 12 NY2d 345 [police department rule prohibiting moonlighting]; Matter of McDonald, 174 AD2d 942 [District Attorney prohibited from engaging in private practice]; Matter of Lazarus v Steingut, 129 Misc 2d 982 [counsel employed by Workers’ Compensation Board prohibited from private practice]; Matter of Goldstein v Bartlett, 92 Misc 2d 262, affd 64 AD2d 956 [law secretaries prohibited from private practice]; Civil Serv. Bar Assn. v Schwartz, 114 Misc 2d 849, affd 97 AD2d 715 [New York City Corporation Counsel attorneys prohibited from private practice]; O’Connell v Abrams, Sup Ct, Albany County, 1979, index No. 9970-79 [full-time employees of Department of Law of New York State Attorney General’s office prohibited from practice of law]; Matter of Klingaman v Bartlett, 92 Misc 2d 271, affd 64 AD2d 1038 [clerks of New York State Court of Claims prohibited from private practice]), it has not been established, nor has the Brewington office supported the proposition, that such a violation of an employment restriction would invalidate an attorney-client relationship between the employee and outside parties or vitiate the right to collect earned attorney’s fees. At most, such employment restrictions may create rights in favor of the employer against its employee.
Accordingly, it is the determination of this court that petitioner Jones has a direct right to a fee on the proceeds of settlement in this case and that Gallina is entitled to a share of that fee as an agent of Jones. The next question is whether *674 that fee shall be calculated on the basis of a percentage of the net contingency fee or on the basis of quantum merit for hourly services rendered.
Measure and Method of Calculating
Reasonable Attorney’s Fees
Where a fee dispute is between attorneys, rather than between a client and former attorney, the rules allow the outgoing attorney to “elect to take compensation on the basis of a presently fixed dollar amount based upon quantum meruit for the reasonable value of services or, in lieu thereof, the outgoing attorney has the right to elect a contingent percentage fee based on the proportionate share of the work performed on the whole case.” (Lai Ling Cheng v Modansky Leasing Co., 73 NY2d 454, 458 [1989].)
The Gallina letter of December 24, 1997 clearly indicates that the outgoing Gallina firm elected to be paid on a percentage share of the contingency fee. Gallina asserts that Brewing-ton’s office understood this election as evidenced in Frederick Brewington’s letter of December 29, 1997, in which he states:
“As [per] your statement that you ‘will not turn over the file unless and until * * * [your] percentage share of the contingency fee is agreed to’, we agree to allow the Court to handle that matter at the conclusion of the case, if we cannot come to terms at that time. As is the procedure in cases such as this, your percentage of the fee will be directly linked to the amount of work performed and the impact of same on the final outcome of the case” (emphasis added).
The court concludes that “only a tortured reading of the correspondence between the parties would even hint that [Gallina] did anything other than elect a contingent percentage fee of the ultimate recovery” (Pearl v Metropolitan Transp. Auth., 156 AD2d 281, 283 [1989]). The court further finds that the language in Judge Bucaria’s order, directing that “outgoing counsel shall have a charging lien on any proceeds resulting from verdict and/or settlement. The specific amount [is] to be determined by the Justice at the time of trial, and if there is a settlement, then by an appropriately noticed hearing,” makes clear that the Gallina firm elected to be paid on a percentage share of the contingency fee (cf. Pearl v Metropolitan Transp. Auth., supra, at 282 [prior order stated that “‘the fee of the outgoing attorney is reserved for fixation by agreement or the *675 trial court upon termination of the action, or its settlement, and that said outgoing attorney is to have in the meantime an indeterminate lien against the file’ ”).
It is within the sound discretion of this court to determine the reasonable percentage of attorney’s fees to be apportioned among outgoing and current counsel, based upon factors such as time and labor required, the difficulty of the questions involved, the skill required to handle the matter, the attorney’s skills and experience, the effectiveness of counsel in bringing the matter to resolution, and other circumstances and equities involved in the particular case. (Cody v O'Neill, 116 AD2d 616 [1986]; Ebrahimian v Long Is. R. R., 269 AD2d 488 [2000]; Pearl v Metropolitan Transp. Auth., supra.)
The court has considered the testimony of counsel and reviewed their itemized summaries of work performed, disallowing time spent in connection with severing the attorney-client relationship and establishing or fixing attorney’s fees. (Trendi Sportswear v Air France, 146 Misc 2d 111 [1989].) The court finds that Jones and Gallina expended 82.15 hours (up to and including Dec. 10, 1997) and that Brewington expended 130.70 hours (up to and including Apr. 4, 2000). Accordingly, each of the respective attorneys, based on their proportionate share of time expended in the prosecution of this action, has earned the following respective percentages of the total fee generated herein: Jones/Gallina — 39%; Brewington — 61%. However, since the Brewington firm assumed the case shortly after suit was commenced, managed the case through discovery, made such decisions and employed such strategies as were necessary to place the case in a favorable posture for resolution (i.e., amendment of the bill of particulars; participation in settlement conferences and negotiation of settlement), the court finds that the Brewington firm is reasonably entitled to be compensated for the skills and expertise which they uniquely contributed in bringing the case to successful resolution. The court, sitting as the Nassau County Medical Malpractice Conference Part, heard the presentations in February and March 2000 of both law and facts regarding the alleged improper transection of the popliteal artery during knee surgery with a resulting second surgery, scarring and loss of sensation. The sophistication of the argument and grasp of the facts were significantly responsible for the increases in the defendants’ offers concluding with the $500,000 settlement. The court notes that neither plaintiffs nor defendants demonstrated that there was a custom and practice with respect to *676 medical malpractice forwarding fees for firms who pay referral fees. However, even if such a practice could have been determined, it is inextricably altered by the inability to agree on a fee distribution following a discharge and cannot be considered in the presence of work actually performed. Accordingly, based upon the totality of the evidence and equitable considerations applicable to the facts of this particular case, the court finds that the Brewington firm is entitled to retain 75% of the net contingency fee and that Jones, together with his agent, Gallina, shall collectively be entitled to a fee distribution of 25%.
Based on Judiciary Law § 474-a, the net fee earned on the $500,000 settlement, less costs and disbursements is $136,080.08. Accordingly, William Jones and the Gallina firm have earned a fee of $34,020.02; the Law Offices of Frederick Brewington has earned a fee of $102,060.06.